**FRANK J. GAVIRIA, ESQ.**
**FRANK J. GAVIRIA, P.A.**
**14 N.E. 1st Avenue, Suite #300**
**Miami, Florida 33132**
**Telephone: (305) 379-4441**
**Fax: (786) 509-8088**
**E-mail: frank@fjgfirm.com**

July 3, 2024

*Delivered Via ECF*

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007-1312

In re: *United States of America v. Alejandro Miguel Leon Maal*
Case No. 02081:S619 CR 144-02 (AKH)
United States District Court for the Southern District of New York

_____

Dear Judge Hellerstein:

Please accept the following Sentencing Memorandum and Motion for Downward Variance Pursuant to the Title 18, U.S.C. § 3553(a) Factors on behalf of Alejandro Miguel Leon Maal. The Sentencing Hearing in this matter is presently scheduled for Thursday, July 11, 2024, at 10:00 a.m.

**1.** *Introduction*

First, Alejandro Miguel Leon Maal wishes to make it clear to this Honorable Court that he is sincerely remorseful for his criminal conduct and recognizes that the offenses to which he has entered his plea of guilty are of a serious nature. Further, the Defendant wholly realizes the impact his poor decision to become involved in this criminal conduct will have upon his family and his future, and knows that he has nobody to blame but himself.

In the instant case, the Presentence Report (hereinafter "PSR") states that with a total offense level of 28 and a criminal history category of I, the sentencing guideline range of imprisonment is 78 to 97 months. [Para. 148 - D.E. 312]. However, the PSR notes that information from the U.S. Sentencing Commission's JSIN database provides that during the last five fiscal years (FY2018-2022), there were 107 defendants whose primary guideline was §2S1.1, with a Final Offense Level of 29 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure, that the average length of imprisonment imposed was 65 months. However, in the case-at-bar the Government will be filing a motion pursuant to §5K1.1.

It is interesting to note that the Probation Office's sentencing chart states that the recommended sentence is fifty (50) months, however based on the directive from this Court, in situations where a motion for departure under §5K1.1 from the Government is anticipated, a recommendation of sentence will not be made by the Probation Department. [Page 40 – D.E. 312]

Inasmuch as the Government will be filing a motion pursuant to U.S.S.G. §5K1.1, and inasmuch as Mr. Leon-Maal has been out on bond living with his family since December 29, 2021, after having served approximately 33 months since his arrest on March 8, 2019, 28 months of which was served at MCC Manhattan and 5 months at MDC Brooklyn[1], a sentence of time-served is respectfully requested.  It is submitted, that a sentence of time-served would be sufficient, but not greater than necessary to comply with the sentencing objectives set out in Title 18 U.S.C. §3553(a).

**2. *Title 18 U.S.C. §3553(A) Factors That Warrant Consideration.***

Title 18 U.S.C. §3553(a)(1) provides that the court in fashioning the appropriate sentence to be imposed, shall consider "*the nature and circumstances of the offense and the history and characteristics of the defendant*."

With regard to the history and characteristics of Mr. Leon-Maal, the Presentence Investigation Report prepared by the Probation Office more than adequately sets out his family history and personal information.   However, it is submitted that there are some significant points that warrant closer consideration as discussed below.

**3. *Alejandro Miguel Leon Maal's Genuine Remorse.***

As noted above, Mr. Leon-Maal is sincerely remorseful for his criminal conduct and wholly realizes the impact his poor decision to become involved in this criminal conduct will have upon his family and his future.  It is submitted that there are two facts that illustrate his genuine remorse, (1) his desire to cooperate fully with the Government, and (2) his plea to the entire Indictment without a plea agreement.  As the Court knows, rehabilitation and refraining from further criminal conduct is unlikely without true remorse.

4. ***The Extreme Conditions of the Defendant's Confinement.***

**<u>Conditions at Metropolitan Correctional Center (MCC)</u>**

First, Mr. Leon-Maal was housed at the Metropolitan Correctional Center (MCC) in Manhattan for approximately 28 months.

---

[1] Specifically, the PSR states that according to the BOP, between March 9, 2019 and July 29, 2021, Mr. Leon-Maal was incarcerated at the Metropolitan Correctional Center (MCC) in Manhattan, and was also incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, New York, between July 29, 2021 and December 29, 2021.

Therefore, it is submitted that Mr. Leon-Maal has suffered extreme punishment already—the functional equivalent of a term much longer than the calendar time he has served to date. *See United States v. Carty*, 264 F.3d 191, 196 (2d Cir. 2001) (holding conditions of confinement can serve as a ground for a downward departure if sufficiently extreme).

He was detained at the MCC during three lockdowns—for an entire year as a result of the COVID-19 pandemic, in the summer of 2019 following Jeffrey Epstein's suicide, and in the spring of 2020 while the MCC searched for a smuggled weapon.  In each of these lockdowns, the level of tension and anxiety in the prison escalated, Mr. Leon-Maal lost email and phone privileges, and he was deprived of showers, warm food, sleep, and personal belongings. For the last year at MCC, Mr. Leon-Maal was not able to have social visits or to see any family members.  He lived in an overcrowded facility where prisoners and guards alike feared the circulation of a deadly virus while being unable to distance or freely obtain personal protective equipment.

**Deplorable Conditions at MDC Brooklyn**

Although Mr. Leon-Maal was only housed at the Metropolitan Detention Center in Brooklyn for approximately 5 months, he was forced to endure the deplorable conditions at that facility.

It is well-known that inmates at the Metropolitan Detention Center in Brooklyn face deplorable living conditions, periodically having no access to water, having spotty electricity and the lack of hot food.  Additionally, that facility experiences staff shortages, since correctional officers have reported overwhelming and dangerous conditions.

MDC Brooklyn is the largest federal pre-trial detention center in the United States, with systematic dysfunction that has resulted in years of unacceptable conditions of confinement for detainees, denial of basic necessities, and inadequate access to counsel and legal materials.

The undersigned counsel has been advised of the following: During the time that Mr. Leon-Maal was housed at MDC Brooklyn, the conditions of the cells were very bad; the floors and the walls were in need of painting; the sink pipes were corroded, rusty with cracks; the lockers were broken; the mirrors were useless, and everything in the cells was in poor condition.  Additionally, the air ducts were clogged with dirt, exposing inmates to breathing dust that contains fungi because the filters of the air ducts were not maintained; the showers were not cleaned well, they were full of mold, fungi, dirt, broken doors, leaks, broken lamps, etc.  Further, the food had been delivered cold and there were many problems in the kitchen, such as damaged refrigerators, damaged dishwashing machines, etc.  The availability of commissary items could take more than a month and when it did come there was little inventory.  Every 2 weeks the inmate allowance for commissary items should have had a limit of $180.00, however that had been reduced for a period of time to a limit of $75.00 every 2 weeks. There was also the problem of unfair confinements, claiming that they had little staff to work in the prison, locking inmates up from Fridays to Saturdays, and on Sundays without being permitted to leave their cell to take a shower. Some weekdays, they opened the cells at noon, forcing the inmates to spend the whole morning locked up.  The facility did not supply what are supposed to be free items like soap, etc.  Lastly, counsel has been advised that medical attention was very bad at MDC Brooklyn.

3

It is submitted that this Court may take these conditions of confinement into consideration when fashioning the appropriate sentence in this case.

In recognition that conditions at the MCC and MDC during the "once-in-a-century" pandemic have exacted "a price" on inmates beyond that ever contemplated, including because of a "well-founded fear" of risk of illness and death,[2] courts in this District have granted downward variances of months and even years to defendants housed in those facilities, whether they contracted COVID-19 or not.[3]

Mr. Leon-Maal's sentence too should take into account that the conditions of his confinement have not remotely been what would be deemed humane in ordinary times.

### 5. *Mr. Leon-Maal's Lack of Criminal History as a 18 U.S.C. §3553 Factor.*

As reflected in the Presentence Investigation Report, Mr. Leon-Maal has no criminal history points whatsoever.

Courts have held that a lack of a defendant's criminal record is an appropriate consideration for the court, and therefore may be given weight in this Court's §3553(a) analysis. It is respectfully submitted that a District Court may weigh a defendant's lack of a criminal record in its §3553(a) analysis, even when the defendant has been placed into a criminal history category of I, since a

---

[2] *United States v. McRae*, No. 17-cr-643-PAE, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("a day spent in prison under extreme lockdown" and in fear of contracting COVID-19 "is, unavoidably, experienced as more punishing" than "an ordinary day in prison").

[3] See examples: *United States v. Sanchez-Reyes,* No. 19-cr-502-DLC (S.D.N.Y. July 24, 2020), (giving "substantial recognition" to "onerous" MCC conditions during COVID-19 pandemic and varying from range of 70-87 months to 48 months in cocaine trafficking case); *United States v. Espinal*, No. 19-cr-622-DLC (S.D.N.Y. Aug. 6, 2020) (granting 10-month downward variance and stating that sentence would have fallen within range of 70 to 87 months were it not for MDC conditions); *United States v. Aracena de Jesus*, No. 20-cr-19-PAE (S.D.N.Y. July 1, 2020) (varying from range of 30-37 months to time served plus one day (approximately six months) where illegal reentry was "far less malignant than most [cases]" and defendant contracted COVID-19 in MCC, thereby enduring "dreadful," "arduous" conditions that "no one would wish . . . on any other human being"); *United States v. Mitchell*, No. 13-cr-752-KPF (S.D.N.Y. Aug. 5, 2020) (imposing 21-month sentence for violation of supervised release instead of 24-month sentence solely because of "unsafe and inhumane" conditions at the MCC); *United States v. Carrillo Berber,* No. 18-cr-703-PAC (S.D.N.Y. June 11, 2020) (varying downward from a range of 46-57 months to impose a sentence of time served (approximately 22 months) because defendant acted as heroin courier and in light of MDC conditions including lack of visitation); *United States v. Casillas*, No. 19-cr-863-VLB (S.D.N.Y. May 4, 2020), (varying from range of 15-21 months to time served (approximately five months) in illegal reentry case in light of multiple factors including MCC conditions); *United States v. Cirino,* No. 19-cr-323-JSR (S.D.N.Y. July 17, 2020) (court imposing 10-month sentence in Hobbs Act robbery case and noting that it would have imposed a sentence of "probably a year to a year and a half" but for "harshness" of BOP conditions "that is not the norm" in light of COVID-19).

Criminal History Level I does not fully account for a defendant's lack of criminal history *as it relates to his character.*

**6. *Title 18 U.S.C. § 3553(a)(2) - Recidivism, Retribution, Deterrence, and the Need to Protect the Public - There is a Low Risk of Recidivism.***

Another important factor regarding Mr. Leon-Maal is that there is a low risk of recidivism and a correspondingly lesser need of incarceration to protect the public. 18 U.S.C. § 3553(a)(2).

Both the Sentencing Guidelines and 18 U.S.C. §3553(a) require the sentencing Court to consider the characteristics of a defendant that make it more or less likely that the Defendant will re-offend. Clearly, Mr. Leon-Maal does not need to be imprisoned further to see the errors of his ways. Further, aside from this detour from a hardworking law-abiding life, Mr. Leon-Maal has lived a respectable life as described in the Presentence Investigation Report.

Another indication that there is a low risk of recidivism is the fact that while he was incarcerated he sought to improve and further educate himself by participating in approximately 49 educational courses, ranging between 1 hour and 26 hours, including some of the following: Study of Asteroids; Lost Civilization of Atlantis; Mysteries of Mankind; 10 Soft Skills You Need; Developing Creativity; Leadership and Influence; Myths and Legends; Reptiles and Amphibians; Tutor Training (two classes); History of Davy Crocket; Into the Great Pyramid (two classes); Sacred Rites and Rituals; Wilds of Madagascar; Re-Entry Ready; the Adventures of Daniel Boone; Namib Desert: Hostile Dunes; Music Appreciation; Entrepreneurship; Sales Fundamentals; Resume Writing; Customer Service; Investment Class; Budget & Finance; Basic Bookkeeping; Business Acumen; Personal Wellness; Quarantine Black History; Quarantine U.S. History; and Quarantine Earth Science.

When those facts are considered, one can conclude that he has a renewed commitment to be a law-abiding individual for the rest of his life. Therefore, it is submitted that a sentence of time-served would be appropriate in this instance.

**7. *Avoidance of Disparity In Sentencing Title 18 U.S.C. §3553(a)(6)***

Title 18 U.S.C. §3553(a)(6) provides that one of the goals of sentencing is to avoid disparities in sentencing.

Specifically, §3553(a) provides: "(a) <u>Factors to be considered in imposing a sentence.</u> -- The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider … **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and …"

In this regard, it is significant to note that Co-Defendant, Victor Mones Coro, received a sentence of fifty-five (55) months without cooperation. The significance is demonstrated by the fact that the Probation Office revised the PSR to reflect "a two-level role enhancement pursuant to 3B1.1(b) based on information that Mones recruited Leon to join ACS, and for most of the period of criminal activity, Leon was an employee of Mones's at the company Mones founded, owned,

and operated.  It was only by working for Mones that Leon started providing flight services to the sanctioned individuals and, Mones made the major decisions for ACS while Leon then carried them out, including at times as an ACS employee." [4] [Page 39 - D.E. 312]

It is submitted that based on Mones' fifty-five (55) month sentence, Mr. Leon-Maal's sentence should be substantially less based on their respective roles and culpability in the criminal conduct.  Such a substantially lesser sentence for Mr. Leon-Maal will avoid a disparity in sentencing in this instance.

## 8. *The Need for Individualized Sentencing.*

The United States Supreme Court in *Pepper v. United States,* 131 S.Ct. 1229 (2011), emphasized the need for individualized sentencing based not only on the crime, but on the particular defendant as well. They said that Federal sentencing demands that every convicted person be treated as an individual and "every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." Citing: *Gall v. United States*, 128 S.Ct. 586, 589 (2007).  As this Honorable Court is well-aware, the Court has full authority to consider any evidence in deciding whether the Guidelines "properly reflect §3553(a) considerations." *Rita v. United States,* 551 U.S. 338, 351 (2007).

The Supreme Court has expressly directed sentencing courts that they may not presume that the guidelines range is reasonable. *Gall v. United States,* 128 S. Ct. 586 (2007). Rather, sentencing courts are directed to make an "individualized assessment" of the sentence warranted by §3553(a) "based on the facts presented." *Gall v. United States,* 128 S. Ct. at 597 (2007). The result is that "[a] sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008).  Ultimately, courts are required to impose a sentence that is "sufficient, but not greater than necessary" to reflect the seriousness of the offense, promote general and specific deterrence, rehabilitate the defendant, and protect the public. 18 U.S.C. §3553(a).

## CONCLUSION

It is respectfully submitted that there is a well-founded basis upon which this Court may sentence Mr. Leon-Maal to a sentence of time-served.

Such as sentence would reflect the seriousness of the offense; promote respect for the law, and provide just punishment for the offense.  Additionally, such sentence would afford a more than adequate deterrence to any future criminal conduct of Mr. Leon-Maal and protect the public as well.  In sum and substance, such a sentence would be in accord with the principles set forth in Title 18 U.S.C. §3553.

---

[4] However, in the "Offense Level Computation" section of the PSR at paragraph 75, there still is a three (3) level increase for role noted, even though the "Revision" section states that it should be a **two (2) level** role enhancement.  Further, in the body of the enhancement language in paragraph 75 its states "four" levels.

It is respectfully submitted that Mr. Leon-Maal, who is forty-six (46) years of age and who has zero criminal history points, deserves another chance to make his contribution to society.  A sentence of time-served would be sufficient, but not greater than necessary, to comply with the sentencing goals set forth in Title 18 U.S.C.A. §3553(2)(A-D).  Again, Mr. Leon-Maal is sincerely remorseful for his criminal behavior and will sincerely regret that conduct every day for the rest of his life.

Based on the foregoing, Alejandro Miguel Leon Maal respectfully requests that this Honorable Court grant him consideration based on the Government's anticipated motion pursuant to 5K1.1 as well as a variance pursuant to Title 18 U.S.C. §3553(a), and find that a sentence of time-served is sufficient, but not more than necessary to achieve the purposes of sentencing.

The within Sentencing Memorandum and Motion for Downward Variance Pursuant to the Title 18, U.S.C. § 3553(a) Factors is submitted in the utmost of good faith and in the interest of justice.

Respectfully submitted,

FRANK J. GAVIRIA, P.A.
14 N.E. 1st Avenue, Suite #300
Miami, Florida 33132
Telephone: (305) 379-4441
Fax: (786) 509-8088
E-mail: frank@fjgfirm.com
(Counsel for Defendant,
*Alejandro Miguel Leon Maal*.)

/s/ ***Frank J. Gaviria***
Frank J. Gaviria, Esq.
Fla. Bar No. 979058

cc:
Kaylan Lasky, A.U.S.A.
Kevin Sullivan, A.U.S.A.
Samuel S Adelsberg, A.U.S.A.
Office of the United States Attorney
One Saint Andrew's Plaza
New York, NY 10007
Telephone: (212) 637-2315, 1587, 2494
E-mail: kaylan.laskey@usdoj.gov
E-mail: Kevin.sulJivan@usdoJ.gov
E-mail: samuel.adelsberg@usdbj.gov

Lisa Scolari, Esq.
20 Vesey Street, Suite 400
New York, NY 10007
Telephone: (212) 227-8899
E-mail: scolarilaw@gmail.com

7